Good morning, Your Honors. Chad Wischuk on behalf of Appellant and Plaintiff Teresita Viana. Good morning. Good morning. Thank you for considering our case. It's an honor to be here. May I reserve four or five minutes for rebuttal? Aspirationally, if we don't use all the time. Yes, I'll keep that in mind. Thanks. Thank you, Your Honor. This is an employment discrimination case, and more specifically, a case regarding pretext. The district court threw out the case on summary judgment despite a plethora of pretext evidence. This court, in the case of Stiegel, summarized the law on pretext in the summary judgment phase very cogently. And if you'll indulge me, Your Honors, I'd like to read the quote because it frames the issues very nicely. The court said, We require very little evidence to survive summary judgment, precisely because the ultimate question is one that can only be resolved through a searching inquiry, one that is most appropriately conducted by a fact finder upon a full record. We have often stated that because motivations are difficult to ascertain, such an inquiry should be left to the trier of fact. An employer's true motive in an employment decision is rarely easy to discern. As we have previously noted, without a searching inquiry into these motives, those acting for impermissible motives could easily mask their behavior behind a complex web of post hoc rationalizations. Well, now the district court assumed that Miss Vianna had made a prima facie case showing of discrimination. What evidence do you contend constitutes a prima facie showing of discrimination? Your Honor, we brought claims under the discrimination laws based on her ethnicity, her age, and her gender. There was no dispute, as I saw it from the district court, as to the prima facie case. Well, they just assumed it. They just let her go to the next level. But what was your evidence of a prima facie case? Do you just get to say you discriminated against me because of my age, my gender, and my ethnicity? Do you have to say anything more? I think you have to say a little more than that. Yes, Your Honor. We presented evidence as to the age, the ethnicity, and the gender, and as to her excellent performance in performing the job for 15 years as a salesperson for FedEx. In fact, there was substantial evidence that Miss Vianna was the star of her work group. Out of the ten individuals in her work group, she was the number one producer. In fact, there was a time period where, out of the ten, she produced close to 41 percent of the total production for the entire team. So in terms of that issue, Your Honor, I don't believe it was even in dispute. Okay, well, let's say you get there. But let's say there are certain circumstances, it doesn't matter how great you are, that, like, say you kill your superior. They can fire you, right? Yes, Your Honor. I mean, that's pretty good. There are certain actions, or if you rob a bank, or you take money, they have evidence of you taking a whole lot of money that's not yours out of there. What is Miss Vianna's—they claim that she wasn't properly recording in her log and that she was saying she was making sales calls that she didn't, in fact, make. So what is Miss Vianna's response to FedEx's allegations that she recorded in her log, that she made sales calls that she, in fact, did not make? Well, Miss Vianna responded from the very beginning with explanations and evidence about her fastidious recordkeeping, her detailed recordkeeping, and that she had never made a sales call that wasn't recorded appropriately. This is part of the pretext, Your Honor, that FedEx is trying to make a case that the recordkeeping was somehow inappropriate or inaccurate, and there is evidence that we produced that the recordkeeping, in fact, was accurate and appropriate. And it gets to the issue, Your Honor, of how FedEx's investigation in the first place was a pretext, because even though from the very beginning of Mr. McMurray's mileage audit, discrepancies were found with regard to every single one of the team members in Miss Vianna's region, she was the only one whose explanations were not accepted right away. Her explanations were common-sense explanations. They were reasonable, but they were not accepted like everyone else's explanations were accepted. And this is where the pretext began, Your Honor. At that point, the sham investigation of Miss Vianna alone continued, whereas an investigation of others who had similar discrepancies or similar problems in their recordkeeping did not continue. I'd also like to point out that there's a multitude of evidence relating to other individuals at FedEx who were given progressive discipline in situations involving recordkeeping. Instead of progressive discipline, instead of accepting the explanation of Miss Vianna, FedEx, in her case, jumped right to the conclusion that somehow she was deliberate or willful in her actions, whereas for other individuals who did the same sort of recordkeeping errors, there's evidence in the record showing meetings, coaching, counseling, documented discussions, expectations meetings. And it's important to point out, Your Honor, that within FedEx's own policies, the policy that they used against her, they called it falsification. For others who did similar things to what she was accused of, they didn't call it falsification, and they provided the progressive discipline. But did it include women or not? The others. The others included women or not? The others that had the mileage problem, did it include women? Yes, Your Honor. Okay. And they accepted those women's explanations? Yes, but none of them. But did it include Hispanics? It did not include Hispanic women, Your Honor. And all of them were over age 40, so that category doesn't apply. So really the only category that you have a factual dispute on is Hispanic. Well, Your Honor, it's difficult to parse out the three protected classes in this case because the mileage audit and the non-uniform application of the policies is only one of the evidence. If her claim was gender, okay, and all of the employees that you're talking about that were investigated were the same gender, and she was the one that was singled out, you hardly have a claim for gender discrimination, correct? Well, Your Honor, because she was the only Hispanic female. And that's the only thing you have right now, right? Because they're all over 40, and you have some other women that gave explanations that were accepted. That's what you're telling me. Well, with regard to the non-uniform application of the mileage audit, yes, but there is additional evidence which calls into question the motivations behind FedEx's termination of her with regard to the other protected classes that she's in. Is she the oldest employee of this group, if you know? She's 55, and I couldn't tell. I saw that everybody was over 40, but I didn't see what the age span was. Is she the oldest of the group? I believe she was. Okay. Do you know the age of the next person who's the oldest, next oldest person? In the work group? Yes. I have that in my records. I don't know it off the top of my head. Maybe you can look in your rebuttal there. Okay. So you're basically just, it would seem that you're saying, that's why I said there was an assumption that you made a prima facie case, and that's what gets into the burden shifting, and what you're saying is then they said they fired her because of, you know, there were things in there that the record that she said she made calls that she didn't make, there was the claims for mileage, and they essentially said that. And you're saying the pretext with that is that their investigation was unfair based on age, gender, and national origin, that McMurray's bias and the jury might determine that he was not biased or the bias would not affect others with FedEx who participated in the decision to terminate the employment, but if you look at everything and all inferences that she showed that there was pretext, is what you're saying, because I guess she gave some explanations and then they investigated more things and then they didn't talk back to her and they fired her, right? Yes, Your Honor. And didn't involve her very much in the investigation. Right, Your Honor. And that goes to some of the shifting positions that FedEx has taken, which also raises an issue that should go to a jury. Initially they didn't inform her of any problem whatsoever in her record keeping. They did the mileage audit. They waited quite a long time, and then when they- She said certain things. She said that she always stays logged into the VPN and that when she was allegedly on call, so that would show her on the VPN. That wouldn't mean that she was not making the calls, that sometimes she took her laptop with her and sometimes she failed to log out, and FedEx didn't really look into that. That's right, Your Honor. There were reasonable explanations for all of the allegations against her, but it seemed as though the common sense was ignored in order to reach the ultimate conclusion that she had somehow deliberately falsified information. And it goes directly to show how FedEx treated others in similar situations differently and they singled her out for improper reasons. I noticed also FedEx relies on some declarations of Oski, Sofetu, Brian Campbell, Jeff Berger, and Robert McGee, and that McMurray met with those people and they stated that Vianna did not meet with any of them on the dates in question. I noticed the declarations are dated November 23rd, 2015, through March 3rd, 2016, which appears to be after the date she was terminated. Is that correct or no? I believe some of those interviews may have happened afterwards. More importantly, Your Honor, we were able to talk to most, if not all of those declarants who walked back their original declarations in saying that although I may not have met with Ms. Vianna that day, it's likely that someone else from my office would have met with her or I was in a meeting and I wasn't able to and she was there. So there was evidence on the other side from us, Your Honor, to show that there was no deliberate misrecord keeping, but the investigation by FedEx simply asked leading and very narrow questions in order to get a result which did not show the big picture, as opposed to the evidence that we've provided as to other individuals who were fired for deliberate record keeping problems. They either had personal gain that was admitted, such as using company credit cards, or multitudes and sometimes hundreds of record keeping problems that could not be explained and they were given the progressive discipline, whereas in this case she was not. Well, I guess what's your best evidence? It seems that, okay, you've pointed out a lot of things, that how the investigation just didn't seem fair and that they were gunning for her and that's your perspective on how you shifted and said it was protectual. Other than the fact that she's a woman, she's Hispanic, and she's over 40, even though a lot of these other people are women and over 40, how do we, you know, what evidence, you know, what if you don't like someone and that's the reason that you trump up an investigation against them? How does that get into it was because you were a woman and you were over 40? You just don't like them. Well, I think in this case there is specific evidence relating to the statements that Mr. McMurray made about Ms. Fianna, which were directly, which were derogatory and directly related to the protected classes which we've sued under. Okay. You're basically abused your time, so I'm going to give you two minutes for rebuttal. Okay. Thank you. Thank you. Good morning. Good morning, Your Honors. May it please the Court. My name is Joseph Riefsnyder. I'm here on behalf of the Appellee FedEx Corporate Services, Inc., commonly known as FedEx Services. This Court should affirm the District Court's ruling for two reasons. One, FedEx Services articulated a legitimate, nondiscriminatory reason for terminating Ms. Fianna's employment, which was her falsification of company records. And two, Ms. Fianna failed to present specific and substantial evidence to establish pretext. Well, how much of a chance did you give her to do that before you fired her? It seemed like, you know, they just barely talked to her, and then they just doubled down on everything and fired her. I disagree with that position, Your Honor. This was a thorough investigation that started in October of 2014 and culminated in the termination in June of 2015. What started out was a mileage audit of not just Mr. McMurray's team, but also Phoebe Kai, a peer manager on the Eastern Sales Board. That occurred after a discussion had taken place with the Director of Sales, Mark Maynard, about looking into reimbursable mileage of the teams. The audit was conducted of the entire team. And to go to Judge Battalion's question, Ms. Fianna was not the oldest on her team. Mr. McMurray had a very diverse team that consisted of four female sales representatives, one female administrative assistant, and five male sales representatives. The oldest being a Hispanic male, Ignacio Felix Diaz, who at that time was 61 years old. Eddie Iguchi was an Asian male who was 60 years old. Robert Sciacchi, a white male who was 56 years old. And Steve Gresham was a white male who was 55 years old. Those four alone were older than Ms. Fianna at that time. And also with Mr. Ignacio Felix Diaz being a Hispanic male, Ms. Fianna wasn't the only Hispanic individual on Mr. McMurray's team. So I have a question for you, hypothetically, okay? So if I have a team, all women, okay? And there's evidence that I singled out one of these women, and it's because I didn't like her woman-ness, okay? I didn't like the way she was being a woman. Does that person have a claim for gender discrimination or not? Or is she precluded because they're all women on the team as a matter of law? I think, Your Honor, if you were hypothetically making the position you terminated someone because they were a woman, that would bring a gender claim. Even though all the other women, even though the whole team is all women? I think if you can establish that the termination was related, being a woman was related to the decision-making process, then yes, you may have a claim. But that is different than the case here. There is nothing linking. Well, your manager called her many sexist names, and some very pejorative, allegedly. The alleged comments, the two specific alleged comments that go to gender, Your Honor. I mean, would you make those comments to a man? No. They wouldn't be appropriate. There are some comments you would make to a man that you wouldn't make to a woman, and those are pretty directed to a woman. I wouldn't make those comments, Your Honor. We're not saying that FedEx condones any of those alleged comments being made. When you look at those comments in the affidavit that was presented to the district court as evidence, it was a Mr. Joseph Hynoski, a former sales representative who was never under McMurray, who was a teammate of Mr. McMurray for 13 years before Mr. McMurray even became a manager. He alleges that on several occasions Mr. McMurray made these alleged derogatory comments. That means those comments had to have been made at least one year prior to the termination, if not 14 years before the termination, some period over there. Okay, so he made the comments, but then there's also evidence, let's say, that she presented that FedEx's investigation was not fair and could have been based on discriminatory animus. She offered reasonable explanations for the alleged mileage overages and McMurray didn't address them. She offered reasonable explanations for allegations that she was on the Internet system at the same time she was allegedly making the sales call, which McMurray did not address. She offered evidence that the declarations that McMurray secured from the clients to the effect that Vianna did not meet with them when she said that she did were incomplete and that subsequent declarations from these clients stated that they did not know whether Vianna had visited the locations on certain days. The record also shows she was never given an opportunity to respond to McMurray's allegations against her until after her employment was terminated. So if you take these factors and you couple them with the comments and the things that you say are stray remarks, why doesn't a jury just get to hear it all and decide whether she, you know, maybe you win then, but why doesn't a jury get to hear it? Well, Your Honor, one, I don't think it's proper to couple them with the stray remarks because they are stray remarks. I mean, this court recently in Tucay v. United Airlines in a decision on January 17, 2018, said that the failure to show a nexus between a discriminatory remark and United's subsequent employment decision rendered the evidence insufficient to make the required showing. That's not this type of situation. The way that I look at this case is that, you know, you've got somebody who had been an outstanding top performer in her role prior to these incidents, and then, you know, there were problems that developed. And I think that the district court appears to be very persuaded by FedEx's case that there were some fraudulent submissions, there were problems in handling the iCell system, and there were practices that could open her up to criticisms about going home during the day and then how you report the mileage. And so there were all these problems that developed. But as I reviewed the evidentiary record, there were a lot of other people with similar problems. And so the fact that FedEx appeared to handle those incidents differently than they handled the instance for this particular plaintiff, doesn't that give rise to some material factual disputes about pretext that's sufficient to survive summary judgment? We're not talking about who's going to win here, but why isn't the evidence regarding her issues and other people's very similar issues and how FedEx treat them differently, why isn't that enough to survive summary judgment? For example, the warning, the suspension as alternatives instead of going immediately to termination. Well, one, Your Honor, FedEx has a policy that Ms. Vianna admitted she was aware of and knows that falsification is a terminable offense. Being found out for falsifying company records, including sales calls, normally will result in termination at FedEx. She's not disputed. She is saying that she didn't falsify. She's saying she has other explanations for it. So why isn't that something that a jury should decide? Well, Your Honor. Did you falsify a record if you have your computer on and maybe you put on some evidence that they either believe you or they disbelieve you, but? Well, Your Honor, what did FedEx's honest belief have at the time? When we started with the mileage audit, which was not an audit just of Ms. Vianna. It was everybody. But that's where I see a lot of factual disputes, though. She had explanations that she proffered regarding how she used the iSell system. It sounds like other people were very confused about how to use it as well. She had a certain practice regarding mileage submissions. It seemed like other people were doing the same thing. And then FedEx made a determination. No one is disputing that FedEx made the determination that there was falsification going on here. But what she's saying in response to that is that that was a rush to judgment and FedEx handled my case in a way that's different than the way FedEx handled other people's case. That's the pretext. No one's saying that FedEx didn't reach the conclusion that there was falsification and that was the reason for termination. The question really is, was that pretextual? And as to the question of whether it's pretextual, it seems to me that the evidence is really disputed because she did proffer evidence that other similarly situated individuals were not treated in the same way, right? Is there any dispute about that? No, she did not, Your Honor. Were there other employees who were found to have falsified sales calls who were warned? There were, if the court looks at the record on pages 1529 through 1536, FedEx presented to the district court, oh, I'm sorry, Your Honor, it's 1346 through 1352, of seven white male employees who between the time of August 2014, which was about one year before Ms. Fianna was terminated, to November 2016, a little more than a year after she was terminated, that FedEx terminated seven white males significantly younger, including two under the age of four employees. Were they warned prior to termination? No, they were not, Your Honor. Were they perfect employees? There's no evidence before the court or in the record regarding those terminations other than their termination letters, Your Honor. But it doesn't go to, I'm sorry, Your Honor. I want to pin this down because then my understanding of the record is different than yours. I'm looking at the termination letter here, one of the exhibits. On March 17, 2015, I had a discussion with you. You were advised and warned on inaccurately documenting completed sales call, so therefore you were terminated. There were other termination letters in the record suggesting that there was warnings given. Yes, Your Honor, but those were different decision makers, different HR advisors, different director of sales involved in those cases. Well, sure. But this decision was more than— But that's the pretext evidence that I'm talking about. That's why she gets to go to a jury. If somebody is able to say, I was not treated the same way as other people, and that's evidence of pretext, why isn't that a jury determination as to whether it's pretextual or not? It seems that to hold otherwise would mean to draw every inference in FedEx's favor instead of the summary judgment standard, which is to draw every inference in her favor. Well, the only difference you have here, Your Honor, is there were the seven terminations I pointed out where they were first-time offenses and terminated, and the letter you just mentioned, Your Honor, Judge Winn, regarding a different decision maker than the one in this case who gave a warning letter before the falsification continued and then terminated. But the circumstances behind why there was a warning letter are not before this case. They're not in the record. They're not before this court. There is no evidence outside. If you take the stray remarks away, Ms. Bianna's case hinges on this alleged sham investigation, but this investigation wasn't just Mr. McMurray. It involved the 59-year-old African-American HR advisor, Josie Davis, as well as the director of sales. And to go to your question you posed to my opposing counsel, Judge Callahan, regarding the declarations from the customers, those declarations were procured during discovery, but those same statements were made when Mr. McMurray met with those customers prior to requesting Ms. Bianna's termination. Did Mr. McMurray in any way investigate her claims as to that she could have had her computer on, or isn't that something you can investigate? Your Honor, that would go into the scope of the investigation. But that's part of what she's claiming that was unfair. Everything she said no one cared about, and everything they wanted to investigate they doubled down on. That's what her allegation is. And so if that is disputed, why don't we have a jury on that? Why do you get to win, you know, as what Judge Wynn said, why do you get all inferences in your favor that you weren't doubling down, and she doesn't, when the summary judgment standard is, she gets the inferences in her favor, and she says everything she said you didn't care about, and I don't see anything in the record that the VPN was checked out, you know, and then, I don't know, then you have this, it starts with an R. Run timer, Your Honor. Yeah, that there's some, that she has some explanation about. Sometimes she used another family vehicle that wasn't registered on that, and so it really wasn't that she was claiming mileage that she wasn't doing. She just didn't have that car registered on it. And that that would not be, if that, in fact, if she were able to prove it, that it wouldn't be falsification then, because the falsification is that you're asking for miles that you didn't actually do, right? Well, the falsification, Your Honor, is the ICEL records of putting into ICEL that she met with Brian Campbell, Charles Hahn, Chris Harris, and those individuals telling Mr. McMurray, I did not meet with Ms. Vianna on those dates and time. It wasn't until during discovery phase that Ms. Vianna then, now contends, well, yeah, I didn't meet with them. If she actually was on the premises, but they didn't, was not aware that she was on the premises, is that, then that would be a lie too? That would not be up to a jury whether that's a lie or the lie is that you didn't go to the premises at all. Well, Your Honor, I think under the law, we don't have to prove our legitimate non-discriminatory reason. We just have to articulate it, which was a violation of company policy regarding falsification. And it was in our honest belief at that time that we had six customers who told us they didn't. But if someone raises a triable issue as to the pretext, then it goes to a trial, and then you put all of it on in a trial, and you win at trial if your position is so strong. Well, our position, Your Honor, and I see I'm running out of time, is as it's set forth in our brief that under a pretext, she has a heavy burden to carry, and that is she has to present specific and substantial evidence to establish a pretext. And we contend that she did not do this in the case and that the district court correctly concluded that she failed to establish pretexts. Okay. Thank you, Your Honor. We have your argument. Mr. Riefschneider? Yes. The next time the FedEx sends you out to an argument, tell them to come to the Eighth Circuit so you can have a great, great experience, okay? Thank you, Your Honor. Okay, two minutes. Thank you, Your Honor. Briefly, with regard to the evidence in the record of others who were terminated, for example, at 352, 353, and 355, there are letters regarding terminations. But in every single one of those instances, there were warnings. There were advising of problems. There were performance improvement plans that were provided. And the evidence shows that those instances were deliberate, almost criminal-type instances, not record-keeping violations. So what we had here is FedEx calling record-keeping negligence at most and comparing it to some of the individuals who they may have fired after warnings. But if she's, like, submitting mileage, if a jury found that she was submitting mileage that she wasn't, you know, actually doing, that's money that she gets, and that would be falsification of records. A jury could decide that. I agree, Your Honor, and that is a jury question. It's a question of fact, as is what FedEx continues to say was their honest belief about the investigation. Whether it really was their honest belief or not is another question of fact for the jury. Thank you. All right. This matter will stand submitted. We have one more matter on for argument, but the Court's just going to take a very short 5 to 10-minute recess, and then we'll be back to conclude the final argument. Thank you. All rise.
judges: Callahan, Nguyen, Bataillon